Uptegrove Lumber Company v. Commissioner.
Uptegrove Lumber Co. v. Commissioner
Docket No. 28466.
United States Tax Court
1952 Tax Ct. Memo LEXIS 134; 11 T.C.M. (CCH) 765; T.C.M. (RIA) 52229; July 16, 1952
*134 Held, the overstatement of cost of goods sold and consequent understatement of gross income on a corporate return results in omission of an amount properly includible in gross income. If this omission is in excess of 25 per cent of the gross income reported in the return, the period of limitations for assessment and collection of the tax is five years. Jacob Rabkin, Esq., and Sanford *135 Becker, C.P.A., 11 W. 42nd St., New York, N. Y., for the petitioner. John E. Mahoney, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income and excess profits taxes against the petitioner for the year 1944 in the amounts of $2,291.92 and $25,367.19, respectively. The only issue in controversy is whether the period prescribed by the statute of limitations for assessment and collection of the deficiencies had expired. Findings of Fact The facts stipulated are found accordingly. The Uptegrove Lumber Company, the petitioner, is a Delaware corporation engaged in the manufacture of cigar box lumber. The petitioner's principal office is in Newark, New Jersey. Between March 10 and 15, 1945, the petitioner filed its income and declared value excess-profits tax and excess profits tax returns for 1944 with the collector of internal revenue for the fifth collection district, at Newark, New Jersey. The petitioner is on the accrual method of accounting and reported total income of $75,780.14 in its income tax return for 1944. The amount of $40,181.18 was included within the category of "cost of goods *136 sold" in Schedule A of the return under the item of "Salaries and wages". This amount represented a reserve established in 1944 for retroactive wage increases, pending approval by the National War Labor Board, and for vacation pay benefits. By inclusion of this figure in cost of goods sold "total income" was reduced by this amount. During the period in question, the approval of the West Coast Lumber Commission, an agency of the National War Labor Board, was required for any employee wage increases, pursuant to the Wage Stabilization Act. As a result of union demands for wage increases, a proceeding was pending with regard to wages for the year 1942. The issues in this proceeding were determined on January 11, 1945. Wage increases were granted. Proceedings with regard to 1943 wage demands were also pending during 1944 and were finally terminated January 30, 1945. During 1943 the petitioner instituted the practice of setting up a reserve for anticipated retroactive wage increases. This practice was continued during 1944. Part of the reserve created for 1944 covered vacation pay benefits which could be computed after the close of the taxable year. The 1944 wage demands were made the *137 subject of a proceeding before the West Coast Lumber Commission. That agency released jurisdiction on December 20, 1945. No payments from the reserve for retroactive wage increases were ever made by the petitioner. In 1945 the reserve was closed by credit to surplus which was not included in the petitioner's net income on its return for that year. The respondent determined that the reserve was not allowable, and mailed the notice of deficiency to petitioner on February 28, 1950. Opinion VAN FOSSAN, Judge: In this proceeding the petitioner does not contest the determination of the deficiency on the merits but resists assessment upon the ground that the period prescribed by the statute of limitations had expired. The petitioner's income and excess profits tax returns were filed about March 15, 1945. The notice of deficiency was mailed on February 28, 1950. The statutory period for assessment is three years, with the exception of an extension to five years if the taxpayer omits from gross income more than 25 per cent of the amount of gross income stated in its return. [1]
*138 The respondent pleads, and contends, that the 5-year period is applicable in this instance since the petitioner omitted gross income in excess of 25 per cent of the gross income reported on its return. The respondent must bear the burden of proof on this contention. C. A. Reis, 1 T.C. 9. The reserve for retroactive wage increases and vacation pay benefits is said to be improper because the liability for such increases was not fixed or certain during the taxable year. The petitioner does not contest this determination. Disallowance of the reserve decreases the petitioner's cost of goods sold by $40,181.18. Gross income, it is said, is, therefore, understated by $40,181.18 and to that extent is omitted. There is no single item on the corporate income and declared value excess-profits tax return labeled "gross income". It is found as the heading to the first 15 lines on the return. Line 15 on Form 1120 calls for the "total income" of the iems listed under the heading of gross income. The figure found on Line 15 is the gross income reported, and is reached as a result of the computation there outlined. In the present instance, the petitioner reported gross income of $75,780.14. *139 The amount of $40,181.18 meets the quantitative statutory requirement of 25 per cent of reported gross income. Respondent relies upon disallowance of the reserve as a component of cost of goods sold as the basis for applying section 275 (c) of the Internal Revenue Code. Petitioner urges, however, that an amount representing salaries and wages must be governed for tax purposes by the law applicable to deductions. Thus, it is urged, the reserve must be considered as a deduction and not as a direct labor cost affecting gross income. Petitioner relies upon our decision in The Weather-Seal Manufacturing Co., 16 T.C. 1312, 1319, where we said: * * *
"* * * It is true that on the tax return forms, and also for general accounting purposes, direct labor costs are treated as a part of the cost of goods sold in calculating gross receipts from a trade or business while other wages and salaries paid or incurred are treated as a business expense deduction. However, the fact remains that both types of payments constitute compensation for personal services rendered which under the Internal Revenue Code, may be allowed as a deduction in computing taxable *140 net income only if reasonable in amount. The end result is the same whether the expense for compensation paid or incurred is taken into account in one schedule on the return as part of the cost of goods sold or in another schedule as a separate deduction, namely, net income is thereby reduced; and it would be wholly unrealistic to say that the former may not be questioned as to reasonableness of amount while the latter may be. The use of an unreasonable amount as wages at either place on the return would result in an unrealistic net income, for tax purposes. * * *" * * *
We did not say, however, that direct labor costs must be considered as having been reported in the return as deductions. In the above quoted portion of the opinion, we recognized and stated that on the tax return forms direct labor costs are treated as part of the cost of goods sold. Section 275 (c), I.R.C. measures the 25 per cent omission of gross income by the amount stated in the return. We cannot disregard the figures on the return in determining if there was an omission. The petitioner may not argue with validity that although gross income was greater than reported on the return *141 that there was no omission because an offset against gross income should be considered as an offset against net income. We are here concerned with the gross income reported by petitioner and the amount properly includible in gross income. If $75,780.14 is the amount of "gross income reported in the return" and if $40,181.18 was "properly includible in gross income", the respondent has met his burden. W. F. Trimble and Sons Company, 1 T.C. 482, 488. Petitioner's argument that the essential character of the reserve for wages is that of a deduction, does not meet the issue as to the omission from gross income. The taxpayer cannot successfully maintain that he did not omit gross income by requiring the respondent to disregard the taxpayer's own computation and to correct it for him. In the present instance an amount was omitted from gross income which was more than 25 per cent of the amount of gross income stated in the return. The statutory requisites for extension of the period of limitations have been met. The petitioner's argument must fail in this regard. The petitioner corporation makes the broader argument that the overstatement of cost of goods sold cannot be *142 an "omission" from gross income. Petitioner places emphasis on the connotation that "omission" requires that something be left out. The statute requires that the taxpayer omit "from gross income an amount properly includible therein". It does not specify that a certain item must be omitted. The petitioner contends that the statute is not concerned with overstatement of gross income by indefinite sums but with the leaving out of particular items that comprise the total. This argument is based upon the House Ways and Means Committee Report, H. Rept. No. 704, 73d Cong., 2d sess. This Committee report enlarged the scope of section 276 (a) of the Revenue Act of 1934 for assessment of tax without regard to the statute of limitations if no return or a fraudulent return was filed. The Committee included within section 276 (a) of the Revenue Act of 1934 cases where the taxpayer understates gross income by more than 25 per cent. The report states "* * * It is not believed that taxpayers who are so negligent as to leave out of their returns items of such magnitude should be accorded the privilege of pleading the bar of the statute." The Senate Finance Committee Report, S. Rept. No. 558, 73d *143 Cong., 2d sess., altered the House version in regard to the taxpayer who understates gross income by more than 25 per cent because of an honest mistake. Instead of keeping the period of limitations open indefinitely, as in fraud cases, a 5-year period was fixed. By this means the provision was withdrawn from section 276 (a) relating to fraud and placed in section 275 (c). Thus, we find the legislative history indicates, as we said in Estate of C. P. Hale, 1 T.C. 121, that the taxpayer who makes "honest mistakes" in understating gross income by more than 25 per cent is not relieved from payment of taxes asserted by the Commissioner within five years. The petitioner urges that the statutory extension to five years was aimed at taxpayers who fail to report receipt of income. It was not intended, it is said, for use against taxpayers who fully report gross sales but take improper offsets for cost of goods sold. The statute, however, identifies the omission as one of gross income, not gross receipts. The petitioner's argument as to the import of the statute is not supported by its legislative history. In Edwin L. Wiegand, et al., 14 T.C. 136, 151, reversed on *144 other grounds, 194 Fed. (2d) 479, we stated: "* * * where there is an understatement of gross income of the prescribed amount, the application of the provisions of the section is not avoided because of honest or innocent mistake of the taxpayer. * * *". In the present instance. the reduction of gross income in the amount of $40,181.18 by means of an improper increase in cost of goods sold, resulted in an omission of an amount properly includible in gross income which was in excess of 25 per cent of the amount of gross income reported in the return. We are without evidence that Congress intended to exclude such an instance from operation of the statute. The petitioner's argument is, therefore, unavailing. The respondent, by mailing the notice of deficiency within the 5-year period, suspended the running of the statute of limitations under the provisions of section 277, I.R.C.[2]
*145 Decision will be entered for the respondent. Footnotes
1. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - (a) General Rule. - The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *
(c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed. * * *↩
2. SEC. 277. SUSPENSION OF RUNNING OF STATUTE. The running of the statute of limitations provided in section 275 or 276↩ on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under section 272 (a)) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final), and for sixty days thereafter.