J. CLIFFORD GIBBS AND MARION W. GIBBS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF FRANK W. GIBBS, DECEASED, IDA IRENE GIBBS AND J. CLIFFORD GIBBS, EXECUTORS, AND IRENE B. GIBBS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64535, 64536.    Filed October 12, 1959.

*Hugh C. Spernow, Esq.*, for the petitioners.
*Sheldon Seevak, Esq.*, for the respondent.

#### OPINION.

RAUM, *Judge:* Respondent determined deficiencies in income taxes for the year 1953, as follows:

| | |
|---|---|
| J. Clifford Gibbs and Marion W. Gibbs | $423.30 |
| Frank W. Gibbs and Irene B. Gibbs | 523.84 |

The sole issue is whether dairy farmers, who elected to make their returns upon an inventory basis valuing their dairy animals according to the "farm price method,"[1] realized a long-term capital gain or sustained an ordinary loss upon the sale of 40 cows during the year 1953. The facts have been stipulated.

J. Clifford Gibbs and Marion W. Gibbs (husband and wife) and Frank W. Gibbs and Irene B. Gibbs (husband and wife) filed joint individual income tax returns for the year 1953 with the director of internal revenue for the Newark district of New Jersey. Frank W. Gibbs died after these proceedings were initiated, and his estate has been substituted as petitioner in his place.

During 1953 J. Clifford Gibbs and Frank W. Gibbs were partners in a dairy farm doing business as "Gibbs Brothers." The partnership owned 3 farms and 200 dairy cows. During 1953, 40 dairy cows held for a period of more than 12 months were culled from the partnership herd and sold. The cows were culled from the herd because they were no longer of value to the herd for dairy purposes. The partnership made its return for the year 1953 upon an inventory basis, valuing its dairy cows according to the "farm price method." It had been using this method since 1949. Its inventory of dairy cows at the beginning

---

[1] A stipulation filed by the parties refers to the method as the "farm pricing unit method," but goes on to say that this method "in effect reflects the market value of the herd." This in substance describes what is generally referred to as the "farm price method."

of the year 1953 was $69,875. Included in that inventory were the 40 cows sold during the year 1953. The inventory value of the 40 cows was $13,000. The inventory of dairy cows at the end of the year 1953 was $56,875. The 40 cows sold during 1953 were not included in its end-of-the-year inventory. Cows purchased during the year 1953 were included in the end-of-the-year inventory.

The sale price of the 40 cows was $7,647.67. The partnership treated the sale as a capital transaction and, using zero as the basis for the cows sold, reported a long-term capital gain in the amount of $7,647.67, the full amount received. Each of the partners treated $3,823.83 as his share of the long-term capital gain and each reported 50 per cent of that amount on his individual income tax return.

The respondent determined that the basis for the 40 dairy cows was $13,000, the amount representing the inventory value of the 40 dairy cows at the beginning of the year 1953; that the partnership sustained an ordinary loss on the sale of the cows in the amount of $5,352.33, which it was entitled to deduct; and that $13,000, the amount representing the inventory value of the 40 dairy cows at the beginning of the year 1953, must be eliminated from the opening inventory of that year.

Petitioners contend that in computing the gain or loss on the sale of the 40 cows, the basis for the 40 cows is zero and the gain on the sale $7,647.67, the full amount of the sale price; that this gain is a gain from the sale of capital assets held for more than 12 months; and that $13,000, the amount of the inventory value of the 40 cows at the beginning of the year 1953, should not be eliminated from the opening inventory. The pertinent provisions of the Internal Revenue Code of 1939 are set forth in the margin.[2]

---

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be cost of such property ; except that—

(1) INVENTORY VALUE.—If the property should have been included in the last inventory, the basis shall be the last inventory value thereof.

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), * * *

\* \* \* \* \* \* \*

(4) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income ;

\* \* \* \* \* \* \*

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" * * * includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition. Such term does not include poultry.

(2) GENERAL RULE.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business * * * exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *

We do not agree with petitioners' contention. The partnership since 1949 employed an accrual method of accounting including its dairy cows in inventory and valuing its inventory according to the "farm price method." Having adopted that method, the partnership was required to use it in computing its gain or loss from any sale of its dairy animals. Under that method, its basis for gain or loss on the sale during the taxable year of the 40 cows held for dairy purposes is the last inventory value thereof. Sec. 113(a)(1). That value is the value at which these cows were included in its opening inventory for the year 1953, which was $13,000, and not zero, as petitioners urge, by reason of the fact that these cows were culled and sold because they were no longer of value to the herd for dairy purposes. The partnership sold these cows for $7,647.67, and sustained a loss on the sale of $5,352.33. The cows sold fall within the definition of "property used in the trade or business" of the partnership set forth in section 117 (j)(1). Section 117(j)(2) provides, in substance, that any loss sustained during the taxable year upon the sale of such property shall not be considered a loss from the sale of capital assets unless the taxpayer had gains from the sale of such assets in that year in excess of the loss sustained. Inasmuch as the partnership did not realize any gains from the sale of capital assets in 1953, the respondent correctly determined that the partnership was entitled to an ordinary loss deduction of $5,352.33. Respondent also correctly determined that $13,000, the inventory value of the 40 cows at the beginning of the year 1953, must be eliminated from the opening inventory; otherwise, there would in effect be a double deduction in respect of the basis for these cows. *John E. Goodenow*, 25 T.C. 1, 2–3, reversed on other grounds 238 F. 2d 20 (C.A. 8).

Petitioners correctly argue that section 117(j)(1), as amended, requires the cows in question to be treated as capital assets. This the respondent does not challenge. The real controversy between the parties relates to the basis of these cows, and, under the statute, we can see no escape from the provisions of section 113(a)(1), which the respondent employed.

Petitioners' reliance on *Scofield* v. *Lewis*, 251 F. 2d 128 (C.A. 5), as authority for the use of a zero basis for the 40 cows sold in 1953, is misplaced. In that case a partnership, engaged in the business of raising livestock, had been on an accrual basis of accounting using the "unit-livestock-price method" of inventory valuation. After the amendment of section 117(j), I.R.C. 1939, by section 324 of the Revenue Act of 1951, including livestock held for draft, breeding, or dairy purposes within the term "property used in the trade or business" thus bringing such livestock within the definition of capital assets, the partnership sought to remove its raised breeding animals from inven-

**30**

tory and to have a zero basis assigned to them without securing prior permission of the Commissioner. The Court of Appeals for the Fifth Circuit held invalid the portions of Regulations 111, section 29.22 (c)-6, that required a taxpayer who elected to use the "unit-livestock-price method" to apply it to all livestock *raised* whether for sale or for breeding, draft, or dairy purposes, and decided that the taxpayer was entitled to capital gains treatment on the entire proceeds of sale of raised breeding animals. In a subsequent case, *Carter* v. *Commissioner*, 257 F. 2d 595, 600–601, reversing a Memorandum Opinion of this Court on other grounds, the same Court of Appeals stated that the principle of the *Lewis* case should not be extended beyond its own facts and that it did not apply to a taxpayer on an inventory method of accounting using the "farm price method" for valuing his cattle. The Court held that such a taxpayer, in computing the gain or loss on the sale of breeding cattle, must use the inventory figure as the basis. This holding supports the respondent's determination in the instant proceedings and the conclusion we have reached as to the basis for gain or loss of the partnership on the sale of the 40 cows.

*Decisions will be entered for the respondent.*